In re Petition for DISCIPLINARY AC-
TION AGAINST Conrad M. FREDIN, an
Attorney at Law of the State of Minne-
sota.

No. C7–96–1080.

Supreme Court of Minnesota.

Aug. 15, 1996.

## ORDER

WHEREAS, the Director of the Office of
Lawyers Professional Responsibility has filed
a petition for disciplinary action alleging that
respondent Conrad M. Fredin has committed
unprofessional conduct warranting public dis-
cipline, namely a failure to a client in commu-
nicating, in pursing the matter and a failure
to attend a court hearing regarding the mat-
ter, and, further, that upon the client's filing
an ethics complaint regarding respondent's
handling of the matter, respondent improper-
ly billed the client for attorney fees for time
spent in defense of the ethics complaint and
that the respondent made misrepresentations
during the investigation of the complaint;
and

WHEREAS, the respondent has uncondi-
tionally admitted the allegations of the peti-
tion, has waived any rights he has pursuant
to Rule 14, Rules on Lawyers Professional
Responsibility, and has entered into a stipu-
lation with the Director in which they jointly
recommend a suspension of 60 days pursuant
to Rule 15 followed by 2 years of supervised
probation subject to the following conditions:

(i) Respondent shall abide by the
Minnesota Rules of Professional
Conduct.

(ii) Respondent shall cooperate fully
with the Director's Office in its ef-
forts to monitor compliance with his
probation and promptly respond to
the Director's correspondence by the
due date. Respondent shall cooper-
ate with the Director's investigation
of any allegations of unprofessional
conduct which may come to the Di-
rector's attention. Upon the Di-
rector's request, respondent shall
provide authorizations for release of
information and documentation to
verify compliance with the terms of
this probation.

(iii) Respondent shall be supervised by a
licensed Minnesota attorney, appoint-
ed by the Director to monitor compli-
ance with the terms of this probation.
Respondent shall provide to the Di-
rector the names of four attorneys
who have agreed to be nominated as
respondent's supervisor within 2
weeks from the date this stipulation is
executed. If, after diligent effort, re-
spondent is unable to locate a super-
visor acceptable to the Director, the
Director will seek to appoint a super-
visor. Until a supervisor has signed
a consent to supervise, the respon-
dent shall on the first day of each
month provide the Director with an
inventory of active client files de-
scribed in paragraph (iv) below. Re-
spondent shall make active client files
available to the Director upon re-
quest.

(iv) Respondent shall cooperate fully with the supervisor in his/her efforts to monitor compliance with this probation. Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Respondent shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Respondent's supervisor shall file written reports with the Direct at least quarterly, or at such more frequent intervals as may reasonably be requested by the Director.

(v) Within 30 days from the execution of this stipulation, respondent shall provide to the Director and to the probation supervisor, if any, a written plan outlining office procedures designed to ensure that respondent is in compliance with probation requirements. Respondent shall provide progress reports as requested.

(vi) Respondent shall maintain total abstinence from alcohol and other mood-altering chemicals, except that respondent may use prescription drugs in accordance with the directions of a prescribing physician who is fully advised of respondent's chemical dependency before issuing the prescription.

(vii) Respondent shall attend weekly meetings of Alcoholics Anonymous or another out-patient alcohol treatment program acceptable to the Director. Respondent shall, by the tenth day of each month, without a specific reminder or request, submit to the Director an attendance verification on a form provided by the Director, which provides the name, address and telephone number of the person personally verifying the attendance. Such attendance verification shall also, upon request, be provided to the respondent's supervisor, if any.

(viii) Respondent shall obtain a professional evaluation at his own expense to determine whether he is an acceptable candidate for an antabuse program. If it is determined that respondent can participate in an antabuse program without significant health risks, respondent shall enroll in such a program at his own expense, comply with all of the program's requirements, and continue in the antabuse program until he is discharged. Respondent shall immediately notify the Director's Office, in writing, of any recommendation for discharge from the antabuse program.

(ix) Respondent shall continue his current psychological treatment and shall complete such therapy programs as are deemed necessary by his treating professional. Respondent shall provide, upon the Director's request, such medical authorizations as may be necessary to allow the Director to verify respondent's compliance with this provision.

(x) Respondent shall, upon the Director request, execute such authorizations, including medical and antabuse program authorizations, as may be necessary for the Director or respondent's supervisor to verify respondent's compliance with the terms of the probation. Respondent shall specifically authorize the antabuse program to disclose to the Director, upon request, all information concerning respondent's treatment and participation in the antabuse program.

They also jointly recommend that the reinstatement hearing provided for in Rule 18 be waived, that respondent comply with Rule 26, that he pay $750 in costs pursuant to Rule 24(a), that he successfully complete the professional responsibility portion of the state bar examination within 1 year of the date of

this order and that he be reinstated on expiration of the suspension provided that at least 15 days prior to such expiration he files an affidavit with the Clerk of Appellate Courts and the Director's Office establishing that he is current with Continuing Legal Education requirements, that he has fully complied with Rules 24 and 26, and that he has refunded to the client the agreed-to amount of excess attorney fees and an amount representing the difference between an uncommunicated settlement offer and the final settlement made by the client; and

WHEREAS, this court has independently reviewed the record and agrees that the conduct admitted to by respondent warrants the jointly recommended discipline,

IT IS HEREBY ORDERED that respondent Conrad M. Fredin is suspended for 60 days followed, upon reinstatement, by a 2-year period of supervised probation subject to the agreed upon conditions set out above.

BY THE COURT

/s/ Alexander M. Keith

A.M. Keith

Chief Justice

PAGE, Justice (dissenting).

I respectfully dissent. Conrad Fredin's conduct, as alleged in the petition for disciplinary action and admitted in the stipulation between the Director's Office and Fredin, constitutes serious misconduct.[1] The misconduct arises out of Fredin's defense of a client and includes Fredin's failure to inform the client of the opposing party's proposal to settle the matter for $3,312, failure to inform the client of the opposing party's motion for summary judgment, failure to respond to the motion for summary judgment, and failure to attend the hearing on the summary judgment motion. As a result, the district court proceeded by default, issued an order granting summary judgment, and entered judgment against the client in the amount of $21,172.50.[2] In addition, after the client filed an ethics complaint with the Director, Fredin

sent the client a statement for legal services rendered, which included time Fredin spent defending the ethics complaint. Finally, Fredin made a number of misrepresentations to the client and the district ethics committee investigator who was investigating the client's complaint.

The purpose of discipline is the protection of the public. *In re Walker,* 461 N.W.2d 219 (Minn.1990). That purpose is not served here. While the stipulation between the Director and Fredin suggests that alcohol or other chemical abuse may be a mitigating factor in this case, it should not be a factor which in essence excuses the misconduct and results in a mere slap on the wrist.

Because I believe that the discipline imposed by the stipulation is inadequate to protect the public, I would reject the stipulation.

TOMLJANOVICH, Justice (dissenting).

I join in the dissent of Justice Page.

---

1. Fredin has a history of prior discipline which "includes a November 30, 1988, stipulation with the Director for a two year private probation for neglecting client matters and failing to respond [sic] a client's certified letter in violation [sic] Rules 1.3, 1.4, 3.4 and 8.4(d) Minnesota Rules of Professional Conduct." (Petition for Disciplinary Action, C7–96–1080, filed May 30, 1996.)

2. The client ultimately settled with the opposing party for $4,500, $1,188 more than the opposing party's original settlement proposal.